IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TRAVIS R. REVES                                                      PLAINTIFF

v.                              Civil No. 4:19-cv-04108

KEVIN CROSS; and SHERIFF
ROBERT GENTRY                                           DEFENDANTS

**REPORT AND RECOMMENDATION**

This is a civil rights action filed *pro se* by Plaintiff, Travis R. Reves, under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 63). After careful consideration, I make the following Report and Recommendation.

**I.    FACTUAL BACKGROUND**

Plaintiff, currently an inmate in the Arkansas Division of Correction ("ADC") – North Central Unit,[1] filed his Complaint on September 3, 2019, in the Eastern District of Arkansas. (ECF No. 2). The following day the case was transferred to the Western District of Arkansas, Texarkana Division. (ECF No. 4). On January 24, 2020, Plaintiff filed an Amended Complaint. (ECF No. 22).

In the Amended Complaint, Plaintiff names Deputy K. Cross and Sheriff Robert Gentry as Defendants. His claims arise from alleged incidents which occurred in July of 2019 during his transport from the ADC to the Sevier County Detention Center ("SCDC") and the two days he was

---

[1] The Arkansas Department of Correction was reorganized in 2019 to become the Arkansas Department of Corrections. The new Department is a Cabinet level department within the Arkansas State Government which includes the Division of Correction and the Division of Community Correction.

1

incarcerated there. Plaintiff is suing Defendants in both their official and individual capacities. He is seeking compensatory and punitive damages. (ECF No. 22 p. 7).

On July 17, 2019, Defendant Cross transported Plaintiff from the ADC North Central Unit to the SCDC in a van provided by the SCDC. (ECF No. 65-4). The van has a factory step permanently attached to the side of the van to assist passengers in stepping up into the van. *Id.*

On August 4, 2020, Plaintiff testified under oath during a deposition. (ECF. 65-5, pp. 1-52). He testified Defendant Cross came to the ADC North Central Unit on July 17, 2019 to pick him up and transport him to Sevier County for Plaintiff's Rule 37 Hearing set for July 18, 2019. *Id.* at p. 9. He specifically described what happened as follows:

> …He, like, took me to the sally port, and they put shackles, handcuffs, and belly chains on me. And Kevin [Defendant Cross] started – or Mr. Cross took me out to the van, and when I went to step in the van, the – my shackles were too short to step all the way in, and I fell forward and hit the seat, bounced back and hit my tailbone on the doorjamb, and fell up against Kevin and on the ground…normally, I believe there's a plastic stepping stool that they take out of the van and put down for you if you've got shackles on…
>
> …I never actually made it to step…when I started to step on it, the way the van was parked, the chain was too short for me to actually step into the van. And when I tried to, my foot slipped off. The chain – like I said, the chain was too short, and it made my foot slip off of the step…

*Id.* at pp. 10-12.

Plaintiff testified he never asked Defendant Cross for a step stool to help him get into the van. (ECF No. 65-5, p. 12). He also states Defendant Cross was standing behind him and had "stuff in his hands" when he fell to the ground. *Id.* at p. 12.

In addition, Plaintiff states, "[I] tried to get up, and I – like I said, instant pain when I hit the – my tailbone just between my buttocks hit the doorsill on the van when I fell…" (ECF No. 65-5, p. 13). He goes on to describe his injury stating "…my leg went numb. My left leg went

numb. My hip was hurt…my foot was numb. I couldn't feel my foot. I couldn't control my leg. And that's what I relayed to Mr. Cross." *Id.*

Plaintiff also testified, "he [Defendant Cross] grabbed me under the arm and set me on the floor of the van. And I sat there for a minute, and I said…'Man I'm hurt…I can't feel my leg.'" (ECF No 65-5, p. 15). Plaintiff then testified Defendant Cross said, "I don't have time for the BS." Then Plaintiff said, "Man, I'm going to have to go – I'm going to have to see somebody, because I can't move my – I can't feel my leg. I can't feel my – my back.  It's hurt…something's wrong." *Id.* at p. 16.  According to Plaintiff, Defendant Cross then said, "sit there for a minute, and let's see how you feel." *Id.*   Plaintiff states Defendant Cross "helped me up into the seat, and I sat there for a minute, and I said, "No" and he said, "Well, we'll deal with this in a minute." *Id.*

According to Plaintiff's testimony, Defendant Cross then shut the van door, put the padlock on it, and "that's the last time I talked to him until…I had to go to the restroom when we got to Tucker" approximately two hours later. (ECF No. 65-5, p. 16-18).  Once they arrived at the Tucker Unit of the ADC, Plaintiff testified Defendant Cross helped him out of the van and "had to help me back into the van, because I couldn't – he had to stand there and hold me while I was – while I was urinating." *Id.* at p. 18.  Plaintiff also testified during transport he was laying in the van seat in pain. *Id.* at p. 19.  He specifically stated, "I was hurt, but I didn't think it was – it wasn't life-threatening or anything like that…I wasn't going to die." *Id.* at p. 16.

Plaintiff also testified as follows, "I didn't ask to go to the emergency room [when they arrived at Tucker].  I mean, when you're – as far as I've ever know, when you're a prisoner…if I'm ADC property, I have to be seen by an ADC doctor, and I knew that wasn't going to happen…because I was away from the unit."  (ECF No. 65-5, p. 20).

3

Once they arrived at the SCDC, Plaintiff states, "I think he [Defendant Cross]…helped me to the bench inside, and I sat down, and…they signed me in." (ECF No. 65-5, p. 21). He goes on to testify, his knee was hurting but he was able to walk inside the detention center "with some assistance" from Defendant Cross and the pain "may have subsided some." *Id.* at pp. 21-22. Plaintiff testified that Defendant Cross never asked him if he needed medical care. *Id.* at p. 17.

According to the affidavit of Defendant Cross, he asked Plaintiff "if he was okay and if he needed medical care" after he assisted Plaintiff into the van. (ECF No. 65-4). He states Plaintiff "denied needing medical care". *Id.* Defendant Cross also states Plaintiff did not mention the need for medical care for "any alleged injury" during the remainder of his trip" to the SCDC. *Id.*

Plaintiff testified when he arrived at the SCDC, he went through screening and told a jailer – whose is not named as a defendant in this lawsuit - he had fallen, he was in pain, and requested medical care. (ECF No. 65-5, pp. 22-24). After screening, Plaintiff states he was placed in an isolation cell and "was in so much pain, and I kept…disturbing the tower people until they moved me to the front into an observation cell or a drunk tank thing…the following day." *Id.*

Plaintiff testified he requested a paper grievance, a paper medical request, and a sick call from one of the jailers – again who is not named as a defendant in this lawsuit - so he could be seen by medical personnel the evening of July 17, 2019. (ECF No. 65-5, p. 25). He goes on to state, "they said, 'No,' or, 'We don't have any.'" *Id.*

On July 18, 2019, Plaintiff saw Nurse Fowler with Turn Key Health Clinics following his hearing in state court. (ECF No. 65-5, p. 22). The SCDC contracts with Turn Key Health Clinics to provide all medical care to incarcerated inmates. (ECF No. 65-1). Nursing staff from Turn Key Health Clinics are on site at the SCDC six hours a day and seven days a week. *Id.*

Nurse Fowler gave Plaintiff Tylenol and a muscle relaxer and told him he would be transported back to the ADC as quickly as possible so Plaintiff could be seen by a doctor with the ADC. (ECF No 65-5, p. 29). Sometime after taking these medications, Plaintiff testified he told Nurse Fowler that "once I was able to sit up and kind of get straightened up a little bit, the pain subsided a little bit." (ECF No. 65-5, p. 30).

On July 19, 2021, Plaintiff was transported back to the ADC. (ECF No. 65-5, p. 32).

Plaintiff testified he never spoke with Defendant Gentry about his fall or the medical care he received while he was detained in the SCDC. (ECF No. 65-5, p. 49). He goes on to state:

> The only…reason that I named Sheriff Gentry…in the lawsuit is because in the policy it says he is…responsible for everything that goes on in the jail and with his jailers and his deputies. And Nurse Fowler did tell me that Sheriff Gentry refused to let me go to the ER since I was ADC property, that I would have to be – get permission from the ADC or she would have to get permission from the ADC to send me to the emergency room…

*Id.*

According to the affidavit of Defendant Gentry, he was not involved in Plaintiff's medical care during his incarceration at the SCDC in July of 2019. (ECF No. 65-1.)

## II. POLICIES OF THE SCDC

It is the policy of the SCDC that all perceived medical emergencies shall receive immediate attention. Emergency Medical situations are to take priority over routine detention facility operations. (ECF No. 65-3, p. 1). An "Emergency Medical Situation" is defined in the SCDC's policy as "any perceived life or health threatening condition, including but not limited to, severe bleeding, unconsciousness, serious breathing difficulties, head injury, severe pain, suicide attempt, onset of unusual behavior, or severe burns. *Id.*

It is the policy of the SCDC that detainees shall be provided access to necessary health care through routine sick call procedures. All sick calls are conducted by a licensed medical

professional. The policy provides that neither employees nor officials of the county shall interfere with a detainee's access to sick call. (ECF No. 65-3, p. 3). It is the policy of the SCDC that detainees are responsible for informing detention facility staff of their needs, and of problems they are experiencing. The detainees must utilize the written sick call and grievance procedures if necessary. *Id.* at pp. 3-4.

It is the policy of the SCDC that all healthcare services within the detention center are adequate for the facility and managed in accordance with accepted health care policies and procedures. (ECF No. 65-3, p. 5). In addition, the SCDC's policy provides that all matters of judgment regarding health services are made within the sole province of the contracted medical staff. No employee of the SCDC is authorized to make non-emergency medical decisions on behalf of any inmate. No one in the Sheriff's Office, including Defendant Gentry, makes any decision as to whether to provide a particular medication, diagnostic testing, or medical treatment based on the cost of the medication, testing, or treatment. (ECF No. 65-1, p. 2).

All decisions regarding medication, medical testing, or medical treatment are left to the professional medical judgment of the physician at the SCDC. (ECF No. 65-1, p. 2). The SCDC has no policy, practice, or custom that requires the physician to consult with any employee of the SCDC before prescribing any medication, testing, or treatment. *Id.*

### III. PROCEDURAL BACKGROUND

Plaintiff filed his Amended Complaint on January 24, 2020 setting forth two claims. (ECF No. 22). He describes Claim One as "Negligence" and alleges on July 17, 2019, "when attempting to lead me into the transport van Deputy K. Cross failed to put out the portable step". *Id.* at p. 4. When asked to describe the custom or policy which caused a violation of his constitutional rights he states:

> I was placed into Deputy K. Cross's custody by ADC to be safely transported from North Central Unit to Sevier County Det. Center Regulation 1020 of the Law Enforcement Code of Ethics Part S-21 states that Deputy K. Cross has a sworn oath to up hold my constitutional rights and to treat me appropriately without malice, ill will or unnecessary force or neglect.

*Id.* at p. 5.

Plaintiff describes Claim Two as "Denial of Emergency Medical Care" and identifies Defendants Cross and Gentry as the Defendants involved in the violation of his rights. (ECF No. 22, p. 5). He alleges on July 17, 2019, "Deputy K. Cross denied me medical attention after I told him I was hurt! He picked me up and loaded me into the transport van and drove me over 5 ½ hrs to the Co. Jail where I was placed into a ISO. Cell and denied a grievance or sick call process." *Id.* For his official capacity claim, Plaintiff states "It is the policy of Sevier County Detention Center for a inmate to be seen by medical immediately after any kind of fall or accident where the inmate says he or she is hurt." *Id.* at p. 6.

Defendants filed a summary judgment motion on March 4, 2021, arguing they are entitled to judgment as a matter of law because: 1) there is no proof of any personal involvement by Defendant Gentry; 2) there is no liability for negligence under § 1983; 3) Defendants were not deliberately indifferent to Plaintiff's medical needs; 4) there is no constitutional right to the answering of grievances; 5) Defendants are entitled to qualified immunity; and 6) there is no basis for official capacity/county liability. (ECF No. 63).

In his Response to Defendants' summary judgment motion, Plaintiff states again that Defendant Cross did not place the portable step stool which was in the van "on the ground nor did he attempt to help the Plaintiff into the van". (ECF No. 67). Due to this blatant show of negligence, I will suffer real pain for the rest of my life!" *Id.* at p. 2. For the first time, Plaintiff argues "K. Cross statements and actions after the incident should show deliberate indifference…never once

has he said I'm sorry, I hate your hurt or anything. Just it wasn't my fault…" *Id.* Plaintiff also states, "I told [Defendant Cross] I couldn't stand and I need to go back into the [ADC] unit to medical. At that time we were less than 100 yards from a complete medical staff! If I can't stand under my own power, It should be plain I need Med. Attention." *Id.* at p. 4. Plaintiff goes on to state on July 18, 2019, "Nurse Fowler told me that it was not anything broken in my hip or left leg but my syatic nerve in my back…Nurse Fowler then told me that Sheriff Robert Gentry denied me going to the Emergency Room to be check out by a Doctor because he didn't have enough officers at the time!" *Id.* at p. 5.

On April 8, 2021, Defendants filed a Reply. (ECF No. 70). They argue: 1) there is no liability for negligence; 2) Plaintiff's sworn statement contained in his Response contradicts his testimony given during his deposition regarding his statements to Defendant Cross regarding his requests (or lack thereof) for medical attention after the fall; 3) Plaintiff's statement about Nurse Fowler telling him Defendant Gentry told her he would not allow Plaintiff to go to the emergency room is inadmissible hearsay; and 4) Plaintiff has not submitted any verified proof that any alleged action or inaction by Defendant Cross delaying medical care caused a detrimental effect to Plaintiff's overall prognosis. *Id.* at pp. 2-6.

### IV. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a

genuine issue of material fact exists." *National Bank of Commerce. v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V. DISCUSSION

### A. Conditions of Confinement

Plaintiff argues Defendant Cross violated his Eighth Amendment rights when he did not provide him with a step stool or assist him into the SCDC's van. The Court construes Plaintiff's allegations as a conditions of confinement claim.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and

9

unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Only "'extreme deprivations," meaning the denial of "the minimal civilized measure of life's necessities," are sufficient to satisfy the objective component of a conditions of confinement claim. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Although having Plaintiff step up into the SCDC's van while handcuffed and shackled, without assistance or providing him with the step stool in the van is not the safest practice, many courts have ruled similar actions by jail officials did not subject inmates to a substantial risk of serious harm. *See McGee v. Adams,* 721 F.3d 474, 479, 484-85 (7th Cir. 2013) (concluding requiring an inmate, who was wearing hand and leg restraints and a waist chain, to use a milk create to step into a van without assistance did not provide "any basis for a claim that any of the defendants were deliberately indifferent to any substantial risk of serious harm"); *Brown v. Sec'y of Pub. Safety & Corrs.,* No. 12-2923-P, 2013 WL 4813757, at *102 (W.D. La. Sept. 6, 2013)

(finding that having inmate exit van without assistance and in shackles, which he claimed limited his mobility, did not create a substantial risk of serious harm); *Robinson v. Lor,* No. 2:09-cv-3036 KJM EFB P., 2012 WL 6005712, at *4 (E.D. Cal. Nov. 30, 2012) (finding no substantial risk of serious harm where officers had handcuffed inmate climb into back of van without steps or assistance).

Even if the court were to find the failure to provide Plaintiff with the step stool or other assistance getting into the van exposed him to a substantial risk of harm, there is no summary judgment evidence to prove Defendant Cross acted with deliberate indifference. Plaintiff admits Defendant Cross had his hands full of paperwork when Plaintiff attempted to enter the van. In addition, Plaintiff testified during his deposition that he did not ask Defendant Cross to use the step stool. *See East v. Dooley,* No. 4:19-CV-04126, 2020 WL 5816248, at *22 (D. South Dakota Sept. 30, 2020) (finding no reasonable jury could find officer's failure to pull out the step stool or otherwise assist an inmate in exiting the van even though inmate was handcuffed, belly chained, and there was ice/snow on the ground where officer retrieved the step stool after the inmate "almost fell on the ice and snow and felt pain in his right foot immediately".)

Defendant Cross's failure to use the step stool to assist Plaintiff in entering the van may have been careless, but at most he was negligent. Mere negligence does not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). Accordingly, I recommend Defendant Cross be granted summary judgment on Plaintiff's conditions of confinement claim.

### B. Denial of Grievance and Medical Request Process

Plaintiff specifically states he "was placed into a Iso. Cell and denied a grievance or sick call process" when he arrived at the SCDC on the evening of July 17, 2019. (ECF No. 22, p. 5).

First, the law is well settled that there is no constitutional right to a grievance procedure. *See Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (inmate failed to state claim because no constitutional right was violated by defendants' failure to process all grievances submitted; prison grievance does not confer any substantive right upon inmates). Second, Plaintiff's deposition testimony confirms an unknown jailer - who is not a named Defendant in this lawsuit - was the person who informed Plaintiff the grievance and medical request forms were not available. (ECF No. 65-5, p. 25). Accordingly, I recommend these claims be dismissed.

### C. Denial of Medical Care

Plaintiff alleges Defendant Cross denied him medical care after he slipped and fell while entering the SCDC's van at the ADC North Central Unit on July 17, 2019. In addition, Plaintiff claims Defendants Cross and Gentry denied him medical care while he was held in the SCDC between the evening of July 17, 2019 and July 19, 2019 - the day he returned to the ADC.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132

F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For a prisoner to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). When evaluating whether a defendant deliberately disregarded a risk, the Court considers the "actions in light of the information [the defendant] possessed at the time, practical limitations of [the defendant's] position and alternative courses of action that would have been apparent to an official in that position." *Letterman v. Does,* 789 F.3d 856, 862 (8th Cir. 2015) (quoting *Gregoire v. Class,* 236 F.3d 413, 419 (8th Cir. 2000)).

In addition, "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg,* 56 F.3d 37 (8th Cir. 1995). The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish. *Jenkins v. Cty. Of Hennepin,* 557 F.3d 628, 635 (8th Cir. 2009); *Long v. Nix,* 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.").

When a delay in medical treatment is the alleged constitutional deprivation, the objective seriousness of the deprivation must also be measured by reference to the effect of delay in

treatment. As a result, to succeed on a delay in medical treatment claim, the plaintiff "must place verifying medical evidence in the records to establish the detrimental effect of delay in medical treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quotation marks omitted) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). In the absence of such evidence, a plaintiff "fail[s] to raise a genuine issue of fact on an essential element of his claim." *Id.*

1. **Defendant Gentry**

At the time of the events in question, Defendant Gentry was the Sheriff of Sevier County and the supervisor of the SCDC. Plaintiff testified during his deposition the only reason he named Gentry as a defendant is because the SCDC's policy states the Sheriff is responsible for the jail and all his jailers and deputies. He also admits he never spoke with Defendant Gentry about his medical treatment. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

Here, there is no summary judgment evidence to establish Defendant Gentry had any responsibility, control, or personal involvement in Plaintiff's medical care during his two day stay at the SCDC in July of 2019. Accordingly, I recommend Defendant Gentry be granted summary judgment on Plaintiff's individual capacity claim against him based on denial of medical care.[2]

---

[2]Plaintiff's allegations about what he claims Nurse Fowler told him Defendant Gentry said concerning his refusal to send Plaintiff to an ADC physician is clearly inadmissible hearsay which will not be considered by the Court. Federal

### 2. Defendant Cross

Defendant Cross does not dispute Plaintiff's back injuries are serious medical needs. Therefore, the only question is whether he was deliberately indifferent to those needs. For purposes of this Report and Recommendation, the Court will accept as true Plaintiff's statements that he told Defendant Cross he wanted to be seen by the ADC physician at the North Central Unit after he fell while entering the van.

Plaintiff testified that after he fell, Defendant Cross said, "sit there for a minute, and let's see how you feel." (ECF No. 65-5, p. 16). Plaintiff states Defendant Cross "helped me up into the seat, and I sat there for a minute, and I said, "No" and he said, "Well, we'll deal with this in a minute." *Id.* Defendant Cross then shut the van door and proceeded to drive on to the scheduled destinations – the ADC Tucker Unit and then on to the SCDC. Plaintiff also testified during transport after the fall he was laying in the van seat in pain. (ECF No. 65-5, p. 19). However, he also specifically stated, "I was hurt, but I didn't think it was – it wasn't life-threatening or anything like that. You know, I wasn't – I'm no – I wasn't going to die." *Id.*

Plaintiff's own testimony shows he did not consider his condition as an emergency which needed immediate attention. Although Plaintiff has a constitutional right to adequate health care, he does not have the right to health care of his choice (i.e. being seen immediately after falling by an ADC physician). As previously stated, the Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish. *Jenkins,* 557 F.3d at 635. Moreover, prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.

---

Rule of Civil Procedure 56 requires the nonmoving party to cite admissible evidence to survive summary judgment. *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) ("When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment."); s*ee also Mick v. Raines,* 883 F.3d 1075, 1080 (8th Cir. 2018).

*Long,* 86 F.3d at 765.

In addition, Plaintiff admits in his deposition once he arrived at the SCDC, Defendant Cross helped him out of the van and into the SCDC. After Plaintiff was seated on a bench waiting to be screened, Plaintiff testified "I didn't see him [Defendant Cross] anymore." *Id.* at p. 22. Plaintiff's own testimony demonstrates Defendant Cross was not involved in Plaintiff's medical care while he was in the custody of the SCDC between July 17 and July 19, 2019.

Moreover, the summary judgment record reflects Plaintiff was examined by Nurse Fowler with Turn Key Health Clinics on July 18, 2019, within approximately twenty-four hours after his arrival at the SCDC, and prescribed pain relievers and a muscle relaxer to ease his pain. At that time, she informed him nothing was broken, and his injuries did not warrant a trip to the emergency room. (ECF No. 65-5, p. 28). Plaintiff also testified after he received the medication, Nurse Fowler came to his cell a couple of times to check on him. *Id.* at p. 30. The following day, Plaintiff was transported back to the ADC.

Here, Plaintiff has not submitted any verifying medical evidence in the record to establish any detrimental effect caused by Defendant Cross's decision to drive on to the SCDC on July 17, 2019 without having Plaintiff evaluated by the ADC physician at the North Central Unit. In addition, the summary judgment record demonstrates Defendant Cross was not involved in the medical care Plaintiff received at the SCDC. Consequently, I recommend Defendant Cross be granted summary judgment on Plaintiff's claim against him for denial of medical care.[3]

**D. Official Capacity Claims**

Plaintiff also sues Defendants Cross and Gentry in their official capacities. Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims

---

[3] Having determined Defendants did not violate Plaintiff's constitutional rights, the issue of qualified immunity will not be addressed in this Report and Recommendation.

may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Sevier County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Sevier County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

Here, Plaintiff has not presented any summary judgment evidence of an unconstitutional policy or custom of Sevier County that contributed to the alleged violation of Plaintiff's civil rights. Instead, Plaintiff alleges Defendants failed to follow the policies of the SCDC. Accordingly, I recommend Defendants be granted summary judgment on all Plaintiff's official capacity claims.

## VI.     CONCLUSION

For the reasons stated, I recommend Defendants' Motion for Summary Judgment (ECF No. 63) be **GRANTED** and all claims against them be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 7th day of May 2021.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE